LAW OFFICES OF

# KURZBAN KURZBAN WEINGER TETZELI & PRATT, P.A.

| | |
|---|---|
| PLAZA 2650 | TELEPHONE (305) 444-0060 |
| 2650 S.W. 27TH AVENUE | |
| SECOND FLOOR | TELECOPIER |
| MIAMI, FLORIDA 33133 | (305) 444-3503 |

September 14, 2015

Via ECF
The Honorable Kimba M. Wood
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   RE: *Walters v. USCIS*, No. 15-cv-137 (KMW)
      Response to Second Order for Supplemental Briefing (ECF No. 25)

Dear Judge Wood:

  Petitioner Ricky Walters respectfully responds to the Court's Order [ECF No. 25] requesting supplemental briefing on the applicability of 8 U.S.C. § 1429 to his case. For the reasons that follow, the cited provision does not bar Mr. Walters from naturalizing.

  **1. The deportation and removal orders against Mr. Walters pose no bar to relief because they are not "outstanding" within the meaning of section 1429.**

  A deportation or removal order poses a barrier to naturalization only if it is "outstanding" − that is, if it retains the force of law and is presently executable. 8 U.S.C. § 1429. Neither the Board of Immigration Appeals' March 26, 1997 deportation order, nor its November 25, 2002 removal order, is "outstanding" within the meaning of § 1429.

    **A. The deportation and removal orders are no longer "outstanding" because Mr. Walters departed the United States and reentered lawfully subsequent to their issuance.**

  When an individual is deported or removed pursuant to a final order, that order is no longer "outstanding" and will hence pose no bar to naturalization under § 1429. *See Application of Martini*, 184 F. Supp. 395, 399 (S.D.N.Y. 1960) (an individual who has been deported is "no longer under an 'outstanding' order of deportation" for purposes of naturalization). In other words, a deportation or removal order is "outstanding" only if the order's subject has not yet been deported or removed pursuant to the order. Furthermore, an individual need not have been forcibly deported for a deportation or removal order to be considered executed; rather, "[f]or the purposes of this chapter, any alien ordered deported or removed . . . who has left the United States, *shall be considered* to have been deported or removed in pursuance of law . . ." 8 U.S.C. § 1101(g) (emphasis added).

September 14, 2015
Page 2

Given this controlling law and Mr. Walters' immigration history, neither the deportation nor removal order entered against Mr. Walters is currently "outstanding." First, it is undisputed that Mr. Walters' departure from the U.S. in 2002 had the effect of executing the 1997 deportation order that was outstanding at the time. As that order has been executed, it is therefore no longer "outstanding."

For similar reasons, Mr. Walters' 2002 removal order is also not "outstanding." After the order issued, Mr. Walters departed the U.S. and reentered on February 9, 2004. *See* Administrative Record ("A.R.") 5281. Under the plain language of § 1101(g), Mr. Walters' removal order must be treated as executed because he was (1) an "alien ordered deported or removed;" (2) who "left the United States" subsequent to the entry of the removal order in question. *Id*. Section 1101(g) defines the consequences of a post-order departure "for purposes of this chapter" – *i.e.* Chapter 12 of Title 8, which encompasses § 1429. Further, § 1101(g) makes clear that an alien like Mr. Walters who departs the U.S. following entry of a removal order "*shall*" be considered to have been removed under that order. And if the alien must be treated as removed pursuant to the order as § 1101(g) instructs, it follows that the underlying removal order must be treated as executed, and hence no longer "outstanding" for purposes of § 1429.

It is true that this Court's *habeas* grant was in effect when Mr. Walters first departed the U.S. following issuance of the 2002 removal order – relief which allowed him to return as a lawful permanent resident. But nothing in the Court's *habeas* grant modifies the effect of § 1101(g) on the removal order following Mr. Walters's departure. Indeed, the Court's *habeas* grant and the lawful entry it facilitated further establish Mr. Walters' eligibility to naturalize. Consistent with the language of §§ 1101(g) and 1429, USCIS itself recognizes that a final removal order will not bar naturalization where "[t]he applicant was removed from the United States and later reentered with the proper documentation and authorization." *See* USCIS Policy Manual, Vol. 12, Part B, Chapter 3, § B.4, *available at* http://1.usa.gov/1CL5Ghe. That precisely describes Mr. Walters' current situation.[1]

Other statutory provisions further establish that Mr. Walters' removal order is no longer "outstanding." Under the INA, the Government cannot simply re-execute a removal order for an individual who has departed and reentered the U.S. following the order's issuance. To rely on a prior removal order in such a circumstance, the Government must follow certain procedures to *reinstate* the order. *See* 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8. The fact that the Government must undertake special procedures to reinstate a prior removal order after the order's subject has departed and reentered the U.S. confirms that unless such an order is reinstated, it cannot lawfully be executed. Here, the Government has not pursued reinstatement following Mr. Walters' reentry (nor could it, since reinstatement can only be employed against aliens who reenter the U.S. illegally). As such, the orders cannot be considered "outstanding" within the meaning of § 1429.

---

[1] Had the Government wished to prevent the consequence of Mr. Walters' departure and lawful reentry on his eligibility to naturalize, it could have sought a stay of this Court's *habeas* grant pending its appeal to the Second Circuit. *See* Fed. R. Civ. P. 62(c); Fed. R. App. P. 8(a). *See also* Fed. R. App. P. 23(d) (providing for stay of *habeas* relief upon showing of "special reasons"). The Government chose not to do so.

### B. Mr. Walters' unconditional gubernatorial pardon undercuts the basis for the deportation and removal orders entered against him.

Apart from the procedural history discussed above, Mr. Walters' deportation and removal orders are also not "outstanding" within the meaning of § 1429 for an additional reason: On May 23, 2008, Governor Paterson of New York granted Mr. Walters a full and unconditional pardon for each of his 1991 New York State convictions. A.R. 5795-96; 5798-80. These convictions were the sole offenses on which Mr. Walters' deportation and removal orders were based. A.R. 40; 251-52. The Governor's decision to pardon the New York offenses therefore undercuts the propriety of executing Mr. Walters' deportation and removal orders.

When the predicate for a final removal order is undermined, the appropriate course of action is for the Government to move to reopen the proceedings – not to pursue removal based on convictions that lack the full force of law. *See Pino v. Landon*, 349 U.S. 901 (1955) (per curiam) (vacating removal order based on non-final conviction); *Channer v. DHS*, 527 F.3d 275, 278 (2d Cir. 2008) (noting that the Government sought reopening "because the district court had vacated" the conviction on which deportation order was based); *McLeary v. USCIS*, No. 11-cv-6075-MAT, 2012 WL 967970, at *5 (W.D.N.Y. Mar. 21, 2012) (when conviction "which was the basis for ordering [alien] removed" was vacated, ICE "[a]ccordingly . . . filed a motion to reopen"). *Cf. Morales Pichardo v. Garcia*, No. EP-02-CA-343-DB, 2003 WL 1566552, at *1 (W.D. Tex. Mar. 25, 2003). Here, the Government has steadfastly refused to reopen or otherwise vacate the orders against Mr. Walters – orders which are premised on now-pardoned convictions. Given the Government's refusal to take appropriate steps to reopen proceedings in light of the pardon, the orders should not be considered "outstanding" so as to bar Petitioner's naturalization.

### 2. The removal and deportation orders entered against Mr. Walters were not issued "pursuant to a warrant of arrest."

It is not enough that a deportation or removal order be "outstanding" to trigger section 1429's naturalization bar: the order must also be "*pursuant to a warrant of arrest* issued under the provisions of this chapter or any other Act." 8 U.S.C. § 1429 (emphasis added). Under the plain terms of the statute, a final deportation or removal order which is *not* made "pursuant to a warrant of arrest . . ." poses no bar to naturalization. As outlined below, neither Mr. Walters' 1997 deportation order nor his 2002 removal order was issued "pursuant to a warrant of arrest," and hence neither bars Mr. Walters from naturalizing under § 1429.

The Government has attempted to circumvent section 1429's clear textual limitation by promulgating a regulation which nullifies the very statutory language it purports to interpret. According to 8 C.F.R. § 318.1, "a notice to appear issued under 8 CFR part 239" and its predecessors under prior regulations "shall be regarded as a warrant of arrest" for purposes of § 1429. The regulation renders this statutory language inoperative because "*[e]very* removal proceeding . . . to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court." 8 C.F.R. § 1239.1(a) (emphasis added). Since every removal proceeding begins with the issuance of a notice to appear, then *every* deportation or removal order will issue "pursuant to a warrant of arrest" if 8 C.F.R. § 318.1 is accepted as valid. But if that is so, then the phrase "issued under the provisions of this chapter or any other Act" has no operative effect on the scope of § 1429.

September 14, 2015
Page 4

That the regulation renders the entire statutory phrase it purports to interpret meaningless presents a serious problem. "Statutes must be interpreted, if possible, to give each word some operative effect." *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209 (1997). *See also Bailey v. United States*, 516 U.S. 137, 145 (1995) (noting "the assumption that Congress intended each of its terms to have meaning"); *Adelson v. Harris*, 973 F. Supp. 2d 467, 497 (S.D.N.Y. 2013) (rejecting interpretation that would render statutory language "mere surplusage"). But 8 C.F.R. § 318.1 does the exact opposite by *depriving* a statutory phrase of operative effect. The canon against surplusage strongly suggests that the regulation's interpretation of § 1429 is not a reasonable one.[2]

Equating a "notice to appear" with a "warrant of arrest" is especially unreasonable given that the INA and its implementing regulations repeatedly distinguish between the two. *See* 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."); *id*. § 236.1(b) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest . . ."); *id*. § 239.2(e) ("When a notice to appear is cancelled or proceedings are terminated under this section[,] any outstanding warrant of arrest is cancelled."); *id*. § 249.2 (providing procedures for certain applicants "served with a notice to appear or warrant of arrest"). *See also United States v. Hovsepian*, 359 F.3d 1144, 1149 (9th Cir. 2004) (discussing notices to appear and arrest warrants as separate documents). Given these clear distinctions, 8 C.F.R. § 318.1's conflation of warrants of arrest and notices to appear cannot be reconciled with the statutory scheme as a whole.

Nor is the regulation's interpretation necessary to avoid an absurd result. There is nothing absurd in Congress distinguishing between individuals who were subject to an administrative warrant of arrest during their removal proceedings and those who were not. The Government decides who will be detained during removal proceedings based both on statutory criteria, *see, e.g.*, 8 U.S.C. § 1226(c) and non-statutory agency policy, *see, e.g.*, Jeh Johnson, *Policies for the Apprehension, Detention and Removal of Undocumented Immigrants* 5 (Nov. 20, 2014), *available at* http://1.usa.gov/1KllAXH. Given that there is at least some overlap between the criteria the Government use to make detention decisions and an alien's fitness to become a citizen, tethering § 1429's naturalization bar to the Government's detention decisions creates no

---

[2]   The statutory history confirms that this provision must be given effect. When Congress enacted the INA in 1952, it carried over current 8 U.S.C. § 1429 from a predecessor provision in the Internal Security Act of 1950, Pub. L. 81-831, § 27, 64 Stat. 987, 1015. The original provision provided in relevant part: "No person shall be naturalized against whom there is outstanding a final finding of deportability . . ." *Id*. When Congress co-opted this provision for the INA, it added the qualifier at issue here – that a deportability finding must be made "pursuant to a warrant of arrest issued under the provisions of this or any other Act" to bar naturalization. *See* Immigration and Nationality Act, Pub. L. 82-414, § 318, 66 Stat. 163, 244 (1952). That Congress expressly added this qualifier to the statute when it enacted the INA further underscores the importance of giving the provision effect.

absurdity – and certainly no absurdity "so gross as to shock the general moral or common sense" as would be necessary to deny the statutory provision effect. *See Morris v. Eversley*, 343 F. Supp. 2d 234, 241 (S.D.N.Y. 2004) (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60 (1930)).

Petitioner recognizes that the handful of decisions on this issue have rejected his position. None, however, are binding on this Court and none are persuasive. The vast majority simply cite 8 C.F.R. § 318.1 without discussing its validity. *See*, *e.g.*, *Baraket v. Quarantillo*, No. 09-CV-3547, 2012 WL 3150563, at *3 n.2 (E.D.N.Y. July 31, 2012); *O'Sullivan v. USCIS*, 372 F. Supp. 2d 1097, 1099 n.2 (N.D. Ill. 2005); *Gonzalez v. Napolitano*, 684 F. Supp. 2d 555, 558 (D.N.J. 2010) *aff'd on other grounds sub nom. Gonzalez v. Sec'y of DHS*, 678 F.3d 254 (3d Cir. 2012). And those that offer some (truncated) discussion either focus on "policy" rather than text, *see In re Muniz*, 151 F. Supp. 173, 174-75 (W.D. Pa. 1956), or ignore the canon against surplusage and the clear distinctions between an arrest warrants and notices to appear that pervade the INA and its implementing regulations, *see Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012).

In the end, 8 C.F.R. § 318.1's equation of a "warrant of arrest" with "notice to appear" is an unreasonable construction of 8 U.S.C. § 1429. While the administrative record in this case contains a document dated November 29, 1993 captioned "Warrant for Arrest of Alien," *see* A.R. 256, the face of the document reveals that it was never served. No other document issued subsequently even purports to be a warrant. As such, neither the 1997 deportation order nor 2002 removal order was issued "pursuant to a warrant of arrest," and hence neither bars Mr. Walters from naturalizing under § 1429.

> **3. In all events, the Court has jurisdiction to review the merits of Mr. Walters' naturalization application.**

Even if Mr. Walters is an individual "against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act," nothing about that fact deprives the Court of jurisdiction. *See Ngwana v. Att'y Gen. of U.S.*, 40 F. Supp. 2d 319, 321 (D. Md. 1999) ("Section 1429 simply has no relevance to district court jurisdiction to review the administrative denial of a naturalization application."). *Accord Ajlani v. Chertoff*, 545 F.3d 229, 239 (2d Cir. 2008) (adopting view that "federal jurisdiction exist[s] 'to review the [naturalization] denial but the scope of review is limited to 'such' denial.'") (quoting *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1047 (9th Cir.2004)).

Further, as Petitioner explained in response to the Government's application for discovery [ECF No. 18], the Government can defend a naturalization denial in district court only on the grounds advanced by the agency at the administrative level. The Court's *de novo* authority is not *carte blanche* for the Government to advance new theories of ineligibility it waived below. Because the agency failed to invoke § 1429 as a basis to deny Mr. Walters' naturalization, basic principles of administrative law prevent it from doing so now.

## Conclusion

For the reasons outlined above, Mr. Walters respectfully submits that 8 U.S.C. § 1429 neither bars him from naturalizing nor curtails this Court's jurisdiction.

September 14, 2015
Page 6

                                                        Respectfully submitted,

                                                        <u>/s/ Ira J. Kurzban</u>
                                                        Ira J. Kurzban
                                                        *Attorney for Petitioner*

cc:      Chris Connolly
          Attorney for Respondents (via ECF)